IN THE UNITED STATES DISTRICT COURT
IN THE NORTHEASTERN DIVISION OF THE
MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| BRIAN BUSCHKILL and | * | |
| KAREN BUSCHKILL, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | DOCKET NO. _____ |
| v. | * | |
| | * | JURY DEMANDED |
| RYDER SYSTEM, INC., d/b/a | * | |
| RYDER TRUCKS, INC., and | * | |
| RYDER TRUCK RENTAL, INC., and | * | Cumberland County, Tennessee |
| TRAILER CONVOYS, INC., and | * | |
| DOUGLAS BEST, | * | |
| | * | |
| Defendants. | * | |

---

## COMPLAINT

---

COME NOW Plaintiffs, Brian Buschkill and Karen Buschkill, and file their complaint, and show unto the Court as follows:

### PARTIES AND JURISDICTION

1. Brian and Karen Buschkill are married and are residents of the State of Indiana.

2. Defendant Ryder System, Inc. d/b/a Ryder Trucks, Inc., is a corporation organized and existing under the laws of the State of Florida with principal places of business at 11690 NW 105 Street, Suite 1E, Miami, Florida, 33178. Ryder is a multifaceted transportation company with approximately 7,700 driver and managing 234,000 vehicles with operations throughout the United States to include Tennessee.

Defendant Ryder System, Inc. is registered with the U.S. Department of Transportation under DOT number 2217859, and can be served, according to the Florida Secretary of State,

through its agent for service of process: Robert D. Fatovic, 11690 NW 105 Street, Miami, Florida, 33178-1103.

    3.  Ryder Truck Rental, Inc. is a Florida Corporation, registered to do business in the state of Tennessee. Ryder Truck Rental is an affiliate of Ryder System, Inc.

    Ryder Truck Rental, Inc. maintained a location for operations at 7336 W. 15th Avenue, Gary, Indiana at all relevant times.

    Ryder Truck Rental Inc., is registered with the U.S. Department of Transportation under DOT number 16130.

    According to the Tennessee Secretary of State Ryder Truck Rental, Inc. can be served through its registered agent: Corporate Creations Network, Inc., 205 Powell Place, Brentwood, Tennessee 37027-7522.

    4.  Defendant Trailer Convoys, Inc., (hereinafter referred to as "Trailer Convoys"), is a corporation organized in the State of Kentucky and transacting business in the State of Tennessee on the date at issue. According to the Kentucky Secretary of State its principal office is located at 9700 Gateway Driver, Louisville, Kentucky 40299.

    Trailer Convoys can be served, according to the Kentucky Secretary of State, with a copy of the complaint and summons through its registered agent: Jeff Bishop, 9700 Gateway Drive, Louisville, Kentucky 40299

    Trailer Convoys is registered with U.S. Department of Transportation under DOT number 105253 and MCC 109634.

    5.  Defendant, Douglas Best, (hereinafter referred to as "Best") is a resident of the State of Tennessee and can be served with a Summons and Complaint at 467 Hunley Road, Speedwell, TN 37870-7543. Defendant Best drove the tractor trailer involved in the wreck.

2

6.  **NOT TO BE READ TO THE JURY**: The Plaintiff alleges that one or more of the Defendants is uninsured, or underinsured, and as such invoke their contractual rights with their insurance carrier, Travelers Insurance Company (policy number 993032696 203 1), who can be served through the Tennessee Commissioner of Insurance, 500 James Robertson Parkway, Nashville, TN 37242-1131.

7.  **NOT TO BE READ TO THE JURY**: The State of Tennessee, who may be served with process through the Attorney General of the State of Tennessee: The Honorable Herbert Slattery, III, Office of the Tennessee Attorney General, John Sevier Building, 500 Charlotte Avenue, Nashville TN  37243, is included as a statute is declared to be unconstitutional.

8.  This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because diversity of citizenship exists between Plaintiff and Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.  Venue is proper pursuant to 28 U.S.C. §1391(a) because the accident giving rise to this action occurred in Cumberland County, Tennessee.

10. Venue as to those defendants with Department of Transportation Authority is also appropriate in this Court pursuant to 49 U.S.C.A §1330.


## INTRODUCTION

11. Defendant Best, an unqualified and unlicensed tractor trailer driver, was employed by Trailer Convoys as a CDL driver.  Defendant Best was driving a Ryder tractor trailer in a construction zone in the scope of his employment with Trailer Convoys. While in a construction zone, on a clear day, Defendant Best rear-ended three cars that had slowed for the construction zone traffic.  The force of the impact resulted in serious injuries to Brian and Karen Buschkill.

3

12. At all relevant times Trailer Convoys had a duty to hire safe, qualified tractor trailer CDL drivers.

13. Trailer Convoys had a duty to supervise its CDL drivers to ensure they remained qualified.

14. Trailer Convoys had a duty to retain only qualified CDL drivers.

15. CDL drivers have maximum hours of driving time beyond which they cannot drive. (see: 49 CFR §395 et. seq.)

16. Defendant Best was not qualified to drive a tractor trailer at the time of the wreck and at all relevant times to this Complaint.

17. Defendant Best was an employee driver of Trailer Convoys.

18. The Freightliner tractor involved in the wreck was owned by Ryder System, Inc. or one of its affiliates to include Ryder Truck Rental, Inc.

19. Ryder System, Inc. directly or indirectly controls Ryder Truck Rental, Inc.

20. Defendant Best was assigned to drive the tractor trailer owned by Ryder System, Inc. or one of its affiliates, with the knowledge, consent, and permission of Trailer Convoys.

21. Defendant Best was assigned to drive a tractor trailer owned by Ryder System, Inc. or one of its affiliates to specifically include Ryder Truck Rental, Inc. (hereinafter collectively "Ryder") with the knowledge, consent, and permission of Ryder.

22. Ryder was responsible to maintain the tractor trailer driven by Defendant Best at the time of the wreck.

23. Ryder provided its tractor trailer for use by Defendant Best and /or Defendant Trailer Convoys by a written contract.

4

24. Defendant Ryder had a duty to ensure it provided safe equipment with working brakes and good tires.

25. Defendant Ryder had a duty to ensure it did not provide tractor trailers to unlicensed drivers.

26. Defendant Ryder had a duty to ensure it did not provide tractor trailers to unqualified drivers.

27. Defendant Ryder had a duty to provide tractor trailers to safe, qualified motor carriers.

28. Defendant Ryder had a duty to conduct a due diligence safety review before contracting the use of its tractor trailer.

29. Defendant Ryder had the capacity and resources, and ability to ensure that the persons or entities it entrusted its tractor trailers were safe and qualified.

30. It is part of the minimum standards for companies like Ryder to make safety inquires before allowing tractor trailers to be used.

31. Trailer Convoys repeatedly had their DOT authority involuntarily revoked by the FMCSA including involuntary revocations in 2005, 2009, 2011, and 2015.

32. Trailer Convoys had a duty to ensure any potential tractor trailer driver employee was safe, qualified and licensed in order to be hired and continued to be safe, qualified and licensed to remain employed as a CDL driver.

33. Trailer Convoys had a duty to properly perform safety and background checks on Defendant Best.

34. Trailer Convoys had a duty to ensure its driver qualification process for hiring and maintaining drivers was adequate and in compliance with the FMCSR.

5

35. Defendant Best applied for a position with Trailer Convoys as a CDL driver and was hired.

36. Trailer Convoys knew, or should have known, that Defendant Best was unsafe, unqualified, and unlicensed prior to the date of the wreck.

37. Defendant, Trailer Convoys, is an interstate common carrier and was based out of Jeffersonville, Indiana at the time of the wreck.

38. The provisions of 49 CFR §§ 301-399, commonly referred to as the "Federal Motor Carrier Safety Regulations" or "FMCSR" are applicable to this case and Ryder, Trailer Convoys, and Best were subject to and were required to obey these regulations at the time of the wreck and at all relevant times prior to the wreck.

39. Defendant Ryder is the owner of the tractor operated by Defendant Best.

40. Defendant Ryder is the owner of the trailer operated by Defendant Best.

41. At the time of the wreck, Defendant Best was an employee and/or agent of defendant, Trailer Convoys.

42. At all times relevant hereto, Defendant Best was a truck driver for Defendant Trailer Convoys and was acting within the scope and course of the business of Defendant Trailer Convoys.

43. At all times relevant hereto, Defendant Trailer Convoys, was acting by and through its employees/agents and are responsible for the acts of those employees and agents pursuant to *respondeat superior*, agency, negligent entrustment, negligent hiring of an independent contractor, or similar theory of law.

44. At all times relevant hereto, Defendant Ryder, was acting by and through its employees/agents and are responsible for the acts of those employees and agents pursuant to

6

*respondeat superior*, agency, negligent entrustment, negligent hiring of an independent contractor, or similar theory of law.

45. At all times relevant hereto, the Defendants were acting in a joint enterprise. Each made money by the efforts and capital of the other defendants.

46. Upon information and belief, on or about July 20, 2016, Defendant Best was driving a tractor-trailer owned by Ryder, at the direction of Trailer Convoys, traveling west-bound on I-40 in Crossville, Tennessee.

47. The tractor trailer was being driven in interstate transportation.

48. It was daylight and the weather conditions were clear.

49. The Defendants had a duty to maintain the tractor-trailer to ensure the safety of citizens on the roads, interstates and highways.

50. At the same time and place, Brian Buschkill was also driving west-bound on I-40 ahead of Defendant Best.

51. Brian Buschkill was driving a red Dodge Caravan at the time of the wreck, and Karen Buschkill was a passenger.

52. The Buschkills, along with two additional red automobiles involved in the wreck, were slowing and stopping in traffic due to the construction zone.

53. The road construction on I-40 West was posted to provide drivers notice of the construction zone, and Defendant Best knew, or should have known, he was entering a construction zone.

54. Defendant Best was traveling at a speed that was unsafe for the conditions then existing.

55. Defendant Best was distracted and not paying attention to the roadway ahead of him.

7

56. Defendant Best was driving in a fatigued state, in excess of the maximum driving time allowed by law.

57. Defendant Best was driving carelessly and erratically and failed to exercise due care while operating his vehicle.

58. Defendant Best was driving the tractor trailer in a careless, negligent, and dangerous manner.

59. As Brian and Karen Buschkill were in the slowed traffic, Defendant Best failed to timely stop the tractor-trailer and violently smashed into the rear of the Buschkill's red minivan, as shown here:



Case 2:17-cv-00042   Document 1   Filed 07/17/17   Page 8 of 25 PageID #: 39



60. The violent force of the collision caused the Buschkill vehicle to slam into the car in front of them, as well as the cable barrier, as shown here:



61. The wreck was caused by the negligence of the defendants and the careless driving of Defendant Best.

62. Defendant Best failed to exercise due care while operating the Ryder tractor-trailer and was driving the Ryder tractor-trailer in a careless, negligent, and dangerous manner.

63. Properly maintained tractor-trailers with working brakes are able to stop for cars ahead of them.

64. The tractor-trailer being operated by Defendant Best had improperly maintained brakes at the time of the wreck, which the Defendant's Ryder and Best knew, or should have known of, prior to the wreck.

65. Properly trained commercial drivers are able to stop for cars ahead of them.

66. Commercial drivers who are paying attention to the roadway are able to stop for cars ahead of them.

67. Alert drivers, who are not fatigued, are able to stop for cars ahead of them.

68. The police determine that Defendant Best's CDL license was cancelled at the time of the wreck.

69. No action of Brian Buschkill contributed to cause the wreck.

70. No failure to act of Brian Buschkill contributed to cause the wreck.

71. No action of Karen Buschkill, a passenger, contributed to cause the wreck.

72. No failure to act of Karen Buschkill, a passenger, contributed to cause the wreck.

73. The wreck was solely caused by the negligence of the Defendants, individually and collectively, and the careless driving of Defendant Best.

74. Brian and Karen Buschkill were each severely injured as a result of the wreck due to the negligence, and gross negligence, of the Defendants individually and collectively.

10

## COUNT I – NEGLIGENCE OF TRAILER CONVOYS, INC.: NEGLIGENT HIRING, TRAINING, ENTRUSTMENT, SUPERVISION AND RETENTION

75.    All preceding statements of the complaint are incorporated herein and realleged as if expressly set forth herein.  Upon information and belief:

76.    Defendant Trailer Convoys, Inc. is a Kentucky interstate common carrier with operations in Indiana.

77.    Defendant Trailer Convoys, Inc. is the employer of Defendant Best at the time of the wreck and all other relevant times.

78.    At all times relevant hereto, Douglas Best was acting within the course and scope of Trailer Convoys business.

79.    At all times relevant hereto, Defendant Trailer Convoys, Inc. was acting by and through its employees/agents, such as Defendant Best, and are responsible for the acts of those employees and agents pursuant to respondeat superior, agency, apparent agency, negligent entrustment, negligent hiring of an independent contractor, or similar theory of law.

80.    At all times relevant hereto, Defendants Ryder and Trailer Convoys, Inc. were acting in a joint enterprise:

a.    They agreed to move property for profit;

b.    They had a written contract;

c.    They coordinated and combined resources and skills in order to achieve their objective of interstate transportation in order to earn money.

81. Prior to the wreck, Trailer Convoys had its authority to operate revoked multiple times by the United States Department of Transportation.

11

82. At all times relevant to this cause of action, Defendant Trailer Convoys was subject to and required to obey the minimum safety standards established by the Federal Motor Carrier Safety Regulations (FMCSR) (49 CFR §§ 301-399), either directly or as adopted by the Tennessee Department of Transportation Safety Rules & Regulations 1340-6-1-.20 and pursuant to T.C.A. §§ 65-2-102 and 65-15-113.

83. The operation of a trucking company and the hiring, qualifying, training, and supervising of its drivers requires car and skill to be done safely or it is foreseeable that serious harm and injury will occur to the traveling public.

84. Trailer Convoys' acts, and failures to act, as described below and above resulted in foreseeable harm to Mr. and Mrs. Buschkill.

85. The Defendants will be shown at trial to have violated the Federal Motor Carrier Safety Regulations which constitutes negligence per se, including but not limited to:

      a. § 383      Commercial Drivers License Standards

      b. § 390      General

      c. § 391      Qualifications of Drivers

      d. § 392      Driving of Commercial Motor Vehicles

      e. § 393      Parts and Accessories Necessary for Safe Operation

      f. § 395      Hours of Service

      g. §396      Inspection, Repair, and Maintenance

86. Defendant Trailer Convoys was required to qualify and hire safe truck drivers and to teach and train those drivers so that they are able to understand and obey the rules and regulations contained in the Commercial Driver's License Manual and carry out their duties and obligations thereunder.

12

87. Defendant Trailer Convoys was required to qualify and hire safe truck drivers and to teach and train those drivers so that they are able to understand and obey the rules and regulations contained in the FMCSR and carry out their duties and obligations thereunder.

88. Defendant Trailer Convoys was negligent, and grossly negligent, in:

    a. hiring and/or contracting with Defendant Best to drive the tractor-trailer at issue;

    b. training of Defendant Best on the FMCSR and Commercial Drivers Manual;

    c. failing to supervise Defendant Best while driving the tractor-trailer;

    d. failing to train Defendant Best to properly drive the tractor-trailer;

    e. failing to train Defendant Best to properly inspect the tractor-trailer;

    f. failing to train Defendant Best to properly maintain the tractor-trailer;

    g. entrusting Defendant Best with the tractor-trailer;

    h. retaining Defendant Best to drive the tractor-trailer;

    i. failing to conduct proper and required checks on the background of their employee, agent and/or contractor, Defendant Best; and

    j. failure to exercise ordinary care to determine their employees' agents' and/or contractors' fitness for the task of driving a commercial vehicle interstate.

    k. failing to have proper and minimally adequate safety management systems in place.

89. Defendant Trailer Convoys had a duty to promulgate and enforce rules and regulations to ensure its drivers and vehicles were reasonably safe, and negligently failed to do so.

90. Defendant Trailer Convoys, through its agents and employees, knew, had reason to know, or should have known by exercising reasonable care, about the risks set forth in this

complaint and that by simply exercising reasonable care these risks would be reduced or eliminated. These risks include, but are not limited to:

a.  The risks associated with unsafe drivers,

b.  The risks associated with failing to train drivers to obey the FMCSR,

c.  The risks associated with failing to train drivers to follow the Commercial Drivers Manual,

d.  The risks associated with failing to train drivers to follow minimum driving standards for commercial drivers,

e.  The risks associated with failing to train drivers to follow minimum inspection standards for commercial drivers,

f.  The risks associated with failing to train drivers to follow minimum maintenance standards for commercial drivers,

g.  The risks associated with failing to have adequate risk management policies and procedures in place,

h.  Failing to ensure its routes could be driven within hours-of-service,

i.  Requiring drivers to meet unrealistic driving goals which Trailer Convoys knew, had reason to know, or should have known would cause its drivers to violate the hours-of-service regulations.

j.  Failing to have policies and procedures in place to identify undertrained and unqualified drivers.

k.  Failure to appropriately implement and enforce risk management policies and procedures to monitor and assess Defendant Best once he was hired.

l.  Failing to implement and follow a written safety plan.

14

m. Failing to protect the members of the public, such as the Plaintiff, from the risks described above,

n. Failing to use the composite knowledge reasonably available to Trailer Convoys to analyze the data available to it to identify the risk, take steps to reduce or eliminate the risk, and to protect members of the public from that risk.

o. Failing to appropriately implement and enforce risk management policies and procedures to identify the risks described above,

91.   In order to put the matter at issue, Plaintiff alleges that Trailer Convoys was negligent in the hiring, qualifying, supervising, training, and retention of Defendant Best and is responsible for negligent entrustment of the Ryder tractor-trailer to his care, and these acts of negligence, and gross negligence, individually and combined and concurring with the acts of negligence of the other Defendants were a proximate cause of the damages.

## COUNT II - NEGLIGENCE AND GROSS NEGLIGENCE OF RYDER SYSTEM, INC., D/B/A RYDER TRUCK, INC. and RYDER TRUCK RENTAL, INC.

92. All preceding statements and allegations of the complaint are incorporated and re-alleged as if expressly set forth herein.

93. At all times relevant hereto, Defendants Ryder and Trailer Convoys, Inc. were acting in a joint enterprise:

a.   They agreed to move property for profit;

b.   They had a written contract;

c.   They coordinated and combined resources and skills in order to achieve their objective of interstate transportation in order to earn money.

15

94. Ryder knew or should have known:

    a.  Best did not have an active, valid CDL license,

    b.  Best was incompetent to drive the tractor trailer,

    c.  Best was unfit to drive the tractor trailer,

    d.  Trailer Convoys had its operational authority revoked multiple times by the United States Department of Transportation.

    e.  That publicly available information showed Trailer Convoys was an incompetent and unfit motor carrier employing unsafe drivers.

95. Ryder, knowing or having reason to know, of Best's and Trailer Convoys' incompetence and unfitness was negligent and grossly negligent in entrusting the tractor trailer to Best and Trailer Convoys.

96. Ryder was negligent in considering, investigating and selecting Defendant Trailer Convoys to use the tractor-trailer.

97. Ryder was negligent in considering, investigating and selecting Defendant Best to use the tractor-trailer without determining he was qualified to do so in violation of 49 CRF §391.11.

98. Ryder had a duty to promulgate and enforce rules and regulations to ensure their tractor trailers were entrusted to reasonably safe trucking companies and reasonably safe CDL drivers, and negligently failed to do so.

99. Ryder failed to conduct proper and required checks on the background of Defendants Trailer Convoys and Best.

100. Ryder failed to properly maintain the tractor trailer and the tractor trailer's poor condition was a cause of the wreck.

16

101.    Ryder was negligent in their failure to exercise ordinary care to determine the fitness of their employees, agents, and/or contractors, in particular Trailer Convoys and Defendant Best, for the task of driving an interstate tractor-trailer.

102.    Ryder had a duty to promulgate and enforce rules and regulations to ensure their vehicles were reasonably safe, and negligently failed to do so.

103.    Ryder's actions and inactions as set forth above were negligent and grossly negligent.

104.    As a result of Ryder's gross neglect of the risks attendant to their decision not to vet Trailer Convoys and Best, not to train their employees in their inherently dangerous work, and not to develop or enforce appropriate guidelines consistent with prevailing safety standards and applicable law, Ryder is liable for actual and punitive damages under applicable law.

105.    Ryders actions and inactions individually, and combined and concurring with the acts of the other Defendants, are a proximate cause of the damages to the Buschkills.

106.    That the acts of negligence attributable to Ryder as shown in this Complaint, are direct, not vicarious, acts of negligence (see: 49 USC §30106 (a)(2) and Restatement of Torts, 2d, §428.)

107.    As the owner of the truck, Ryder is vicariously liable for the acts of Defendant Best and Trailer Convoys.  To the extent Ryder's vicarious liability is preempted by 49 USC §30106 (the Graves Amendment), Plaintiffs allege that Ryder is uninsured for purposes of their insurance contract.

17

## COUNT III
## NEGLIGENCE OF DOUGLAS BEST

108.  All preceding statements of the complaint are incorporated herein and realleged as if expressly set forth herein.  Upon information and belief:

109.  Defendant Best was not a licensed commercial tractor-trailer driver at the time of the wreck.

110.  Defendant Best was not qualified to drive tractor trailers at all relevant times.

111.  The tractor-trailer driven by Defendant Best was driven with the permission and at the direction of Defendant Trailer Convoys.

112.  The tractor trailer driven by Defendant Best was driven with the permission and knowledge of Ryder.

113.  The Ryder tractor driven by Defendant Best was driven in the course and scope of his employment with Defendant Trailer Convoys.

114.  At the time and place of this wreck, Defendant Best was generally negligent under the circumstances then and there existing in that he:

      a.   failed to use caution in a construction zone;

      b.   failed to keep his vehicle under control;

      c.   failed to keep a proper lookout;

      d.   failed to timely apply his brakes, alter direction of travel, or take any other appropriate action when he, by the exercise of due and reasonable care, should have seen the vehicles in front of him slowing and stopping;

      e.   failed to operate his vehicle in a safe and prudent manner in view of the conditions which existed at the time of the wreck;

f.  failed to stop with the flow of traffic;

g.  failed to keep a safe and reasonable distance between the car he was following and his tractor-trailer (following too closely);

h.  operated his vehicle at an excessive speed;

i.  failed to yield the right of way;

j.  failed to inspect the tractor trailer in a manner considerate of the safety and lives of the others persons lawfully on the road;

k.  failed to operate the tractor trailer in a manner considerate of the safety and lives of the other persons lawfully on the road;

l.  improperly changes lanes

m.  failed to use a turn signal

n.  drove in a reckless manner;

o.  drove in a fatigued state and in excess of his maximum driving time; and

p.  such other actions or inactions that may be shown at a hearing of this cause.

115.  At the time and place of this accident, the Defendant Best  was negligent per se in that he was violating one or more of the statutes of the State of Tennessee; to include but not be limited to:

a.  T.C.A. §55-8-103     Failing to obey applicable traffic laws.

b.  T.C.A. §55-8-123     Driving on roadways laned for traffic.

c.  T.C.A. §55-8-124     Following too closely.

d.  T.C.A. §55-8-136     Drivers to exercise due care.

e.  T.C.A. §55-8-142     Signals for turns.

f.  T.C.A. §55-8-152     Speed limits.

19

|   |   |   |
|---|---|---|
| g. | T.C.A. §55-8-197 | Failure to yield right of way |
| h. | T.C.A §55-9-204 | Brakes |
| i. | T.C.A. § 55-10-205 | Reckless driving |

116. That Defendant Best was subject to the "Federal Motor Carrier Safety Regulations" 49 CFR §§ 301-399 either directly, or as adopted by the Tennessee Department of Transportation Safety Rules & Regulations 1340-6-1-.20 and pursuant to T.C.A. §§ 65-2-102 and 65-15-113, at the time and date of the wreck.

117. Defendant Best will be shown at trial to have violated one or more of the Federal Motor Carrier Safety Regulations which constitutes negligence per se, including but not limited to:

|   |   |   |
|---|---|---|
| a. | §383 | Commercial Driver's License Standards |
| b. | §390 | General |
| c. | §391 | Qualifications of Drivers |
| d. | §392 | Driving of Commercial Motor Vehicles |
| e. | §393 | Parts and Accessories Necessary for Safe Operation |
| f. | §395 | Hours of Service |
| g. | §396 | Inspections, Repairs, and Maintenances |

118. Defendant Best's negligence, and gross negligence, individually and collectively with the negligence of the other Defendants was a proximate cause of the wreck and the resulting injuries and damages to Brian and Karen Buschkill.

20

**NOT TO BE READ TO THE JURY**
**COUNT IV TRAVELERS INSURANCE COMPANY**

119. All preceding statements of the complaint are incorporated herein and realleged as if expressly set forth herein. Upon information and belief:

120. Please take notice that the foregoing Complaint has been filed against the Defendants, Ryder System, Inc. d/b/a Ryder Trucks, Inc., and Ryder Truck Rental Inc., Trailer Convoys, Inc. and Douglas Best. Plaintiffs in the Complaint assert and would show that these Defendants may be uninsured or underinsured motorists and therefore a claim may result against Travelers Insurance Company. Plaintiffs aver that pursuant to the terms of the aforementioned insurance policy with Travelers Insurance Company, the uninsured and underinsured motorist coverage is available pursuant to the provisions of T.C.A §56-7-1202 et seq. Plaintiffs aver that at the time of the wreck at issue in this cause they had available to them uninsured/underinsured motorist coverage for two cars in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00) per person/ Five Hundred Thousand Dollars ($500,000.00) per incident for each car and that they herewith provide to Travelers Insurance Company notice of their claims should the same become material up to such amounts of uninsured or underinsured motorist coverage for the wreck and damages set out in the insurance contract.

**NOT TO BE READ TO THE JURY**
**COUNT V – DECLARATION OF UNCONSTITUTIONALITY**

121. All preceding statements of the complaint are incorporated herein and realleged as if expressly set forth herein. Upon information and belief:

122. Plaintiffs seek a judicial determination of their legal rights with respect to Tenn. Code Ann. § 29-39-102, as well as a judicial determination that Tenn. Code Ann. § 29-39-102

21

violates the Tennessee Constitution, pursuant to Tennessee's Declaratory Judgments Act, Tenn. Code Ann. § 29-14-102.

123. Plaintiffs have alleged injuries compensable only through non-economic damages, which, based upon severity, experience before the Tennessee courts and Tennessee juries in cases of similarly significant injuries, greatly exceed the applicable limitations on such damages under Tenn. Code Ann. § 29-39-102 and punitive damages under § 29-39-104.

124. The limitation on non-economic damages codified at Tenn. Code Ann. § 29-39-102 and 104 violates the Plaintiff's fundamental and "inviolate" right to trial by jury, guaranteed in Article 1, § 6 of the Tennessee Constitution, by supplanting the jury's determination of facts proven at a fair and proper trial, namely, appropriate compensation, and substituting a legislative determination, divorced from the facts of the case, that overrides the jury's constitutionally guaranteed determination of those facts.

125. Plaintiffs believe the statutes are also in violation of Art. XI § 16 of the Tennessee Constitution.

126. The limitation on non-economic damages codified at Tenn. Code Ann. § 29-39-102 violates the separation of powers mandated by Article II, §§ 1 & 2 of the Tennessee Constitution by permitting the General Assembly to require judges to enter judgment at odds with a jury's fair and proper verdict and the record developed in the case, as well as arrogate to itself the judicial power to suggest remittitur, and by permitting the General Assembly to impermissibly encroach upon the adjudicative function of the judicial branch.

127. Pursuant to Tenn. Code Ann. § 29-14-107, a copy of this Complaint is being served on the Attorney General of the State of Tennessee, notifying the State of Tennessee Attorney General that Plaintiff is challenging the constitutionality of Tenn. Code Ann. § 29-39-102.

22

128. Rule 5.1 of the Federal Rules of Civil Procedure requires the Plaintiffs to file this Notice promptly upon drawing the constitutionality of a state statute into question. Subsection (b) requires the Court to certify to the Tennessee Attorney General that the statutes have been questioned and Subsection (c) provides that the Tennessee Attorney General may intervene within 60 days after this Notice if filed, unless the Court sets a later time.

129. Resolution of this issue is not proper at this point because the matter is not ripe until a judgment exceeding the caps is obtained, nor is certification of this question to the Supreme Court of Tennessee proper at this time because it does not meet the requirements of Tennessee Supreme Court Rule 23.

130. Although the Plaintiffs are serving a copy of this Complaint and Notice on the Tennessee Attorney General pursuant to Fed. R. Civ. P. 5.1(a)(2) and T.C.A. § 29-14-107(b), because it is premature to consider these issues at this time, the Plaintiffs request the Court set a time after the entry of any verdict for the attorney general to intervene, pursuant to Fed. R. Civ. P. 5.1(c). The Plaintiffs also move this Court to amend any Scheduling Order to provide a post-verdict briefing schedule for determining whether the issue should be certified to the Supreme Court of Tennessee, and if not, briefing on the merits as to the constitutionality of the statutes.

## COUNT VI - DAMAGES

131. All preceding statements of the complaint are incorporated herein and realleged as if expressly set forth herein. Upon information and belief:

132. Brian and Karen Buschkill, as a result of the Defendants' negligence and statutory violations, have suffered a loss in the companionship, society, services, and consortium of one another, as well as economic and non-economic loss.

Case 2:17-cv-00042   Document 1   Filed 07/17/17   Page 23 of 25 PageID #: 54

133. As set forth more fully in the facts hereinabove, each of the Defendants acted in a negligent manner which either alone, or combined and concurring with the actions of the other defendants acts of negligence, directly and proximately caused the wreck and Brian and Karen Buschkill's damages.

134. Defendants' conduct, individually and collectively, constituted a conscious disregard for the life and safety of Brian and Karen Buschkill and for the lives and safety of the motoring public generally, were willful, wanton, and reckless, and these defendants are therefore also liable to Brian and Karen Buschkill for exemplary and/or punitive damages.

135. The Defendants' negligence, and gross negligence, is the proximate cause for the economic and non-economic damages of Brian and Karen Buschkill, and the jury is requested to provide restitution for the Buschkill's harms and losses to the full extent allowed by law after hearing the facts of this case.

**WHEREFORE,** Plaintiffs pray that the following relief be granted:

a.  A  trial by jury;

b.  For Summons and Complaint to issue against the Defendants;

c.  For judgment against the Defendants as restitution to the Buschkill's for past, present, and future non-economic damages, to the full extent allowed by law and equity;

d.  For judgment against the Defendants as restitution to the Buschkill's for past, present, and future economic damages to the full extent allowed by law and equity;

e.  That the jury order full restitution from the Defendants in an amount the jury believes to be just, fair, and equitable, after hearing the facts and issues in this case, not to exceed $3,000,000.00 for Brian and Karen Buschkill.

f.  For an amount of punitive damages against Defendants Ryder, Trailer Convoys, and

24

Best in an amount the jury believes to be just, fair and equitable, after hearing the

facts and issues in this case, not to exceed the sum of $6,000,000.00.

g.  Court Costs and discretionary Costs.

h.  For all such further and general relief which this Court deems just and proper.

Respectfully submitted,

LAW OFFICES OF MORGAN G. ADAMS

BY:  __/s/ MORGAN G. ADAMS____
MORGAN G. ADAMS, BPR #013693
ATTORNEYS FOR PLAINTIFFS
1419 Market Street
Chattanooga, TN  37402
Telephone:   [423] 265-2020
Fax:            [423] 265-2025